IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

JEANETTE PFEIL,

                        Plaintiff,                        OPINION AND ORDER

    v.

                                                                 09-cv-390-wmc

EDWARD KRAEMER & SONS, INC. and
UNITED OF OMAHA LIFE INSURANCE CO.,

                        Defendants.

---

In this action brought under the Employee Retirement Income Security Act, 29 U.S.C. § 502(a)(3), plaintiff Jeanette Pfeil alleges that defendant Edward Kraemer & Sons, Inc. (EKS) breached its fiduciary duty by (1) failing to inform her husband and her about their option to accelerate life insurance benefits and (2) inaccurately advising them about the termination date of benefits coverage. Plaintiff also alleges an equitable estoppel claim against EKS for the same conduct. Now before the Court is defendant's motion for summary judgment[1].

Because plaintiff has not shown that the summary plan description (SPD) misled or inadequately advised the Pfeils about the right to accelerate life insurance benefits, Seventh Circuit case law compels a finding that defendant EKS met its fiduciary duty despite failing to remind the Pfeils about the availability of those benefits, nor can equitable estoppel offer plaintiff a remedy. While the SPD is ambiguous regarding the precise termination date of benefits, plaintiff has not shown that defendant's interpretation of the termination date was

---

[1] United of Omaha Life Insurance Company is also a named defendant in this case, but is being dismissed pursuant to mutual stipulation of the parties. Accordingly, all references to defendant are to defendant EKS.

wrong or that she was ultimately prejudiced by that interpretation, so she cannot succeed on those breach of fiduciary duty or estoppel claims either. Accordingly, defendant's motion for summary judgment will be granted on all claims.

UNDISPUTED FACTS[2]

A.  The Parties

Plaintiff Jeanette Pfeil is the widow of Dennis Pfeil, a former employee of defendant Edward Kraemer & Sons, Inc (EKS). EKS sponsored a Group Life Plan for life insurance benefits. United of Omaha Life Insurance Company issued the Group Life Plan. EKS was the Plan Administrator.

B.  The Plan

During Mr. Pfeil's employment with EKS, he participated in the Group Life Plan. He was insured for $300,000 in life insurance benefits under the plan. Ms. Pfeil was his designated beneficiary.

In 2003, EKS distributed a copy of the Summary Plan Description (SPD) for the Group Life Plan to employees' mailboxes, including Mr. Pfeil's. The Group Life SPD informed employees when and how their coverage could end. The SPD stated, in relevant part:

> Your insurance will end [on]

---

[2] As set forth in the parties' proposed findings of fact, the following facts are undisputed giving plaintiff the benefit of all reasonable inferences.

   (d) the last day of the Policy month in which You are no longer eligible.  You will no longer be eligible when the earliest of the following occurs:

    (1) You are not in an eligible classification described in the Schedule;

    (2) Your employment with the Policyholder ends;

    (3) You are not actively employed; or

    (4) You do not satisfy any other eligibility condition described in this Policy.

The SPD defines "Active Employment" as regularly and consistently working 20 or more hours each week.

 The SPD also provides that an employee may continue insurance after it would otherwise end when an employee becomes totally disabled.  According to the SPD, "totally disabled" means "that because of an injury or sickness you are completely and continuously unable to perform any work or engage in any occupation."  This SPD provision allows continuation of life insurance for nine months after an employee is totally disabled:

> Disability Elimination Period
>
> Your insurance will continue during the Disability Elimination Period as long as you remain totally disabled.  The Disability Elimination Period is the nine consecutive months of total disability beginning on the date you first became totally disabled.
>
> If your employment or membership in a class ends, or if this policy or class terminates during your Disability Elimination Period, you may apply for an individual life insurance conversion policy according to the terms of the conversion privilege of this policy.

When an employee's Group Life coverage ends, the employee may convert that coverage into an individual life insurance policy. The SPD describes the process for conversion as follows:

> If any of your life insurance ends because your employment or membership in a class ends, you may apply for an individual policy of life insurance (called a conversion policy) without giving information about your health. Issuance of a conversion policy is subject to the following conditions:
>
> (a) You may apply for any of our individual life insurance policies except term insurance. You may not apply for any supplemental coverage.
>
> (b) You may apply for an amount which is not more than the amount of your terminated group life insurance
>
> (c) The premium for your conversion policy will be at our standard rate for that type of policy according to:
>
>> (1) Your class of risk; and
>> (2) Your age on the date the policy takes effect.
>
> (d) You must submit your written application and your first conversion premium to us within 31 days after your group life insurance ends or reduces.

In addition, the plan provides for "Living Benefits," which allow for acceleration of benefits during a participant's lifetime under certain conditions. Living Benefits are available to an employee with a terminal condition who requests the payment of these benefits during his lifetime. If elected, Mr. Pfeil's policy would have entitled him to an upfront payment of $100,000, to be deducted from the $300,000 due on death. The SPD defines a "terminal condition" as an injury or sickness which is expected to result in the employee's death within twelve months and from which there is no reasonable prospect of recovery.

**C. The Claim**

In 2005, Mr. Pfeil was diagnosed with duodenal cancer. He never returned to work full-time after that diagnosis. On December 21, 2005, Mr. Pfeil began receiving short-term disability benefits. He was eligible to receive these benefits for 26 weeks. During the time he received short-term disability benefits, EKS considered Mr. Pfeil to be an active employee consistent with the terms of the Plan.

Mr. Pfeil exhausted his short-term disability benefits on June 20, 2006. He then became eligible to receive long-term disability benefits. Around that time, Sue Ruhland, defendant's human resource generalist, advised Mr. Pfeil that he would no longer be considered an active employee once he began receiving long-term disability benefits, which meant certain of his employment benefits coverage would end. Mr. Pfeil forestalled this between June 20 and July 21, 2006 by electing to use his accrued vacation time. On July 21, 2006, Mr. Pfeil began to receive long-term disability benefits.

During Mr. Pfeil's illness, EKS had shifted to using a human resources person to provide benefits advice, and one of the individuals most familiar with benefits had given notice. As a result, Ruhland had been asked to come back to perform this function after being laid off for five weeks due to downsizing. EKS did not have an employee benefits manager overseeing Ruhland, as they had in the past.

On August 1, 2006, the Pfeils met with Ms. Ruhland. In that meeting, Ruhland provided them with information regarding their ability to continue coverage under defendant's employee benefit plans, as well as the forms they needed to complete to continue

their health and dental insurance coverage, to reallocate Mr. Pfeil's 401(k) account and to convert his group life and voluntary life benefits to individual policies. Ruhland also discussed the option to convert his group life benefits during this meeting and sent Mr. Pfeil a confirmatory letter that same day, stating in part that:

> You have the right to convert your basic group life insurance to an individual policy. Should you decide to do this, you have 31 days from July 31, 2006 to submit an application form to Mutual of Omaha Life Insurance Company. If you are interested in converting your basic group life insurance, please see the enclosed "Life Conversion Coverage" form for rates to use in computing the annual premium[.] If you are interested in converting to an individual policy after you have reviewed the rates, please complete the conversion coverage application, attach your premium payment, and forward it directly to Mutual of Omaha.

In dealing with the Pfeils, Ruhland never pointed out the option of requesting "Living Benefits" rather than let coverage lapse for lack of funds. The record does not indicate whether in early August of 2006 Mr. Pfeil's cancer diagnosis had progressed to the point that his death was "expected . . . within twelve months" with "no prospect of recovery" as required by the Plan's Living Benefits clause. Given the aggressive nature of the cancer involved (www.answers.com/topic/small_intestine_cancer_1), Mr. Pfeil's rapid decline and other statements, however, it is no great leap to believe he would have met these requirements from a medical, if perhaps not yet psychological, point of view.[3] We cannot

---

[3] Neither side refers to it, but Ms. Pfeil testified in her deposition that the Pfeils had just learned on July 28, 2006 -- three days before meeting with Ruhland -- that her husband's cancer had returned and that it was inoperable and incurable.

know for sure, since Ruhland did not point out and the Pfeils apparently never considered the Living Benefits option.

The Pfeils ultimately chose to convert their health, dental, and voluntary life insurance policies at the same premium rates they paid before coverage terminated. The Pfeils did not submit a conversion application or premium payment to continue Mr. Pfeil's group life insurance as an individual policy (presumably because the group life premiums would have required a new out of pocket expense previously paid by EKS).

On January 8, 2007, a little more than four months after meeting with Ruhland, Mr. Pfeil passed away. Soon after, Mutual of Omaha denied plaintiff's claim for group life benefits. In its letter to Ms. Pfeil, Mutual of Omaha explained that it determined that Mr. Pfeil's coverage ended August 31, 2006 -- the date signifying the end of the nine-month Disability Elimination Period, which began November 28, 2005, and gave the Pfeils until the end of September 2006 to convert. Mutual of Omaha denied Ms. Pfeil's claim because it had no record of Mr. Pfeil converting the coverage to an individual policy.

OPINION

Plaintiff contends that defendant EKS breached its fiduciary duty and should be estopped from denying coverage for two reasons. First, she argues that defendant's employee, Ms. Ruhland, failed to inform her husband and her about the right to elect Living Benefits. Second, plaintiff contends that Ms. Ruhland inaccurately advised them about the

7

date on which the Group Life Benefits ended. Both contentions must be rejected consistent with Seventh Circuit case law binding this court.

I.  Living Benefits

   A.  Fiduciary Duty

The parties agree that the Plan is governed by ERISA and defendant EKS, as Plan Administrator of the Group Life Plan, acts as a fiduciary. *Bowerman v. Wal-Mart Stores, Inc.*, 226 F.3d 574, 590 (7th Cir. 2000). Under ERISA, fiduciaries must communicate material facts regarding benefits eligibility to plan participants. *Vallone v. CNA Financial Corp.*, 375 F.3d 623, 640-41 (7th Cir. 2004). In accordance with this duty, fiduciaries must write SPDs "in a manner calculated to be understood by the average plan participant" and "sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under the plan." 29 U.S.C. § 1022(a). It is undisputed that defendant gave Mr. Pfeil a copy of the SPD.

As a general proposition, a written SPD fulfills the fiduciary's duty to communicate the material terms of a plan to participants. *Frahm v. Equitable Life Assur. Soc. of U.S.*, 137 F.3d 955, 961 (7th Cir. 1998) (rejecting claim that "bad advice delivered verbally entitles plan participants to whatever the oral statement promised, when written documents [such as an SPD] provide accurate information"). Plaintiff relies on *Bowerman v. Wal-Mart Stores, Inc.*, 226 F.3d 574, 590 (7th Cir. 2000), and *Anweiler v. American Elec. Power Serv. Corp.*, 3 F.3d 986, 991 (7th Cir. 1993), for the proposition that fiduciaries have duties to convey

8

information to participants accurately that extend beyond the information conveyed in the SPD, at least where the SPD's language is deemed ambiguous. Plaintiff further points to *Schmidt v. Sheet Metal Workers' Nat'l Pension Fund*, 128 F.3d 541, 546-48 (7th Cir. 1997), for the proposition an employer may also breach its fiduciary duty by failing to properly train its benefits employees.

Unfortunately, none of this case law helps plaintiff on the facts here. In *Bowerman*, the Court found that the defendant breached a fiduciary duty and would be estopped when it unintentionally misadvised an employee about benefits options, but only after the Court determined that the SPD was inadequate and ambiguous. 226 F.3d at 590, 591 ("*If* the written materials [are] inadequate, *then* the fiduciaries themselves must be held responsible for the failure to provide complete and correct material information in the event that a nonfiduciary agent provides misleading information") (quoting *Schmidt v. Sheet Metal Workers' Nat'l Pension Fund*, 128 F.3d 541, 548 (7th Cir. 1997) (emphasis supplied).

In *Bowerman* and later in *Kamler v. H/N Telecomm. Svcs., Inc.*, 305 F.3d 672 (7th Cir. 2002), the Seventh Circuit explained that a claim based on the oral misrepresentation by the plan's administrator may only proceed where the written ERISA plan is ambiguous. *Bowerman*, 226 F.3d at 591, *Kamler*, 305 F.3d at 681-82. If the SPD conveys benefits information such that an average person would understand the benefits, then anything said or omitted by a fiduciary in later conversation is irrelevant. *Id. See also Kenseth v. Dean Health Plan, Inc.*, 568 F. Supp. 2d 1013, 1017 (W.D. Wis. 2008) ("[T]he question is whether an average person could read the plan and determine whether a service is covered.

9

Only if the answer is 'no' does the fiduciary become obligated to provide a member with another means of determining coverage.").

The initial question under *Bowerman*, then, is whether plaintiff has shown that the SPD is misleading or ambiguous with respect to the availability of Living Benefits, such that an average person would have difficulty understanding its meaning. Here, the SPD plainly states that a plan participant who suffers an injury or sickness that is expected to result in the employee's death within twelve months, and from which there is no reasonable prospect of recovery, is entitled to request the payment of Living Benefits within his lifetime.

Plaintiff does not argue that this explanation of the availability of Living Benefits is ambiguous, nor is it. While plaintiff argues in her brief that she had to hire an attorney to understand the SPD, she points to no specific wording in the Living Benefits provision that creates ambiguity or leads to the possibility of more than one interpretation, much less that is misleading. Nor does she argue that the SPD could have explained the availability of these benefits any better.

Absent ambiguity in the SPD's description of Living Benefits, plaintiff cannot show that EKS breached any fiduciary duty cognizable under controlling Seventh Circuit law, even though Ruhland failed to discuss that seemingly obvious option with the Pfeils. As plaintiff notes, Ruhland's failure is particularly poignant given that the Pfeils may well have been able to use the accelerated benefits to defray the cost of paying new premiums, rather than forgo life insurance benefits entirely at a time when the chance Mr. Pfeil's imminent death was likely, if not a certainty.

10

The *Anweiler* decision is not helpful to plaintiff's claim either. 3 F.3d at 991. In *Anweiler*, the Seventh Circuit found a breach of fiduciary duty without analyzing the adequacy of an SPD. But in that case, there was no SPD at all, so the Court had to evaluate the fiduciary's other communications to assess whether the defendant breached its duty. *Id*. In contrast, the SPD at issue here directly communicated relevant, reasonably clear information to Mr. Pfeil regarding his entitlement to Living Benefits.

Finally, plaintiff cites *Schmidt* for the proposition that a plan administrator may still breach its fiduciary duty without any intent to deceive or mislead, if a defendant does not adequately train its employees. 128 F.3d at 547-48 ("we would add that the Trustees may also breach their fiduciary duties by failing to exercise care in training someone like [defendant's benefits employee], or by retaining her in circumstances where they should know her performance to be inadequate"). While plaintiff need not show that defendant EKS or its agent Ruhland intended to mislead her husband or her, plaintiff has not provided sufficient facts for a reasonable trier of fact to find that defendant did not adequately train Ruhland. Indeed, plaintiff failed to propose any facts regarding Ruhland's training. To the contrary, the available record shows that Ruhland was reinstated to a position she held competently in the past, albeit with greater supervision.

Writing on a clean slate, one could certainly craft a colorable claim for breach of EKS's fiduciary duties of loyalty and prudence as described in 29 U.S.C. § 1104, based on Ruhland's failure to even mention during her in-person meeting with the Pfiels on August 1, 2006, the seemingly (if not painfully) obvious solution available in Mr. Pfeil's contractual

11

right to living benefit, rather than to pay a prohibitively expensive conversion premium or walk away from the group life benefit entirely. As explained by Judge Ripple in his dissent in *Beach v. Commonwealth Edison Co.*, 382 F.3d 656 (7th Cir. 2004):

> ERISA requires plan "fiduciar[ies]" to "discharge [their] duties with respect to a plan solely in the interest of the participants and beneficiaries" and "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." 29 U.S.C. § 1104(a)(1)(B).

*Id* at 4. Indeed, other federal circuits have recognized a fiduciary's duty to disclose material changes to an ERISA plan to its beneficiaries similar to that considered and rejected by the Seventh Circuit in *Beach*. *See Note: Uninformed, Misinformed or Disinformed when "Movin' Out"?: Circuit Court splits on Employer Fiduciary Duties of Disclosure*, Elder L. J. 167, 169-72 & 181-201 (2006)(contrasting the Seventh Circuit's "strict employer-intent 'disinformation' standard for breach of the ERISA fiduciary duty" with the more lenient standard applied by the Second, Third, Sixth and Ninth Circuits).

But if an administrator's obvious, even glaring, failure to provide material guidance to a participant were enough by itself to find a breach of fiduciary duty, when the same information is readily available in the written ERISA plan, then the narrow exception carved out by the Seventh Circuit's decision in *Bowerman* and subsequent decisions would be swallowed whole. Indeed, such a holding would recognize a new fiduciary duty to provide material guidance *beyond* the straightforward provisions in the written plan, a proposition expressly rejected in *Bowerman*. So, too, would a holding that an agent's failure to disclose

12

obviously material information is *per se* proof of a fiduciary's failure to train -- or at least enough to proceed to trial -- be a blatant end around *Bowerman* and its progeny, which this court is constrained from reaching whatever the arguable merits of such a holding.

### B. Estoppel

Plaintiff's estoppel claim regarding Ruhland's failure to advise the Pfeils about Living Benefits fails for much the same reason. Plaintiff again relies on *Bowerman*, but as with a claim for breach of fiduciary duty, she must first establish that the SPD was inadequate or unclear. *See, e.g., Kannapien v. Quaker Oats Co.*, 507 F.3d 629, 637 (7th Cir. 2007) ("oral misrepresentations may become grounds for ERISA estoppel only where plan documents are ambiguous or misleading"); *Gopon-Rosel v. Plastics Engineering Co.*, 2009 U.S. Dist. LEXIS 3949, *11 (E.D. Wis. 2009) (no estoppel where plan documents were "perfectly clear"). As already noted, plaintiff failed to develop an argument that the SPD was unclear regarding the availability of Living Benefits; nor could she. Accordingly, plaintiff cannot succeed on her estoppel claim against defendant, even though it is undisputed that Ruhland did not advise the Pfeils about the right to accelerate benefits based on Mr. Pfeil's terminal illness.

## II. Termination Date

### A. Breach of Fiduciary Duty

The analysis is different with respect to whether the SPD unambiguously and accurately explains their termination date for group life insurance benefits, though it is still a matter of contract interpretation appropriate for summary judgment under *Bowerman*. 226

F.3d at 591; *Bechtold v. Physicians Health Plan*, 19 F.3d 322, 325 (7th Cir. 1994); *Neuma, Inc. v. AMP, Inc.*, 259 F.3d 864, 871, 873 (7th Cir. 2001).

Plaintiff argues that the SPD's ambiguity is illustrated by the conflict in interpretation of the SPD between defendant and United of Omaha in determining when Mr. Pfeil's eligibility for coverage ended. Defendant does not attempt to reconcile the two interpretations, nor does defendant seriously argue that the SPD is unambiguous. Accordingly, this Court finds the SPD is ambiguous with respect to calculation of the termination date of coverage.

Plaintiff must also demonstrate, however, that defendant's interpretation of the SPD was wrong, and that Ruhland provided her and her husband with incorrect information about the end of coverage. *See Bowerman*, 226 F.3d at 590. Plaintiff does not develop an argument that defendant misinterpreted the SPD or that Ms. Ruhland provided her and her husband with false or misleading information regarding the termination date. Just because defendant EKS interpreted the SPD differently than Mutual of Omaha, does not lead to the automatic conclusion that defendant's interpretation was wrong.

More importantly, for purposes of the pending motion for summary judgment, assuming that Ruhland gave plaintiff and her husband inaccurate information, plaintiff fails to offer evidence sufficient for a reasonable jury to conclude that she relied on the information to her detriment. *Bowerman*, 226 F.3d at 590. In particular, Pfeil does not claim, nor could she credibly claim, her husband and she would have elected to continue coverage if Ruhland had told her the termination date was one month later. At most, an

interpretation of the SPD in line with Mutual of Omaha's interpretation would have provided the Pfeils with another month of life insurance benefits, or another month during which they could have converted. Ultimately, additional coverage during that month would have been meaningless, at least on the record before this court, as Mr. Pfeil did not pass away until months later, long after their coverage would have expired even using Mutual of Omaha's more favorable interpretation of the SPD.

Plaintiff argues that her husband and she would have continued to pay the life insurance premiums if they had known about the option for Living Benefits which is certainly likely. As I discussed however, the SPD straightforwardly explained the right to elect Living Benefits, and current law in this circuit at least imposes no duty on a fiduciary to explain further, much less to counsel in favor or, the right to accelerate benefits. So unfortunately for plaintiff, an ommission that actually caused the greatest harm to her does not amount to a breach of fiduciary duty under the law and the misrepresentation (if it was such) that may have amounted to a breach caused no harm.

**B. Estoppel**

Plaintiff's estoppel claim is based on the same facts and argument as her claim for breach of fiduciary duty and fails for similar reasons. More specifically, plaintiff has not established that Ms. Ruhland provided them with the wrong termination date for Mr. Pfeil's benefits, nor that her advice about the termination date caused injury. For these reasons, summary judgment will be granted on plaintiff's estoppel claim as well.

ORDER

IT IS ORDERED that:

(1) Defendant Edward Kraemer & Sons, Inc.'s motion for summary judgment, dkt. # 21, is GRANTED.

(2) Judgment having been stipulated to by counsel for the parties in favor of the only other remaining defendant United of Omaha, the clerk is also directed to enter final judgment in this matter.

Entered this 1st day of June, 2010.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge